264 So.2d 13 (1972)
CITY OF MIAMI BEACH, Appellant,
v.
FRYD CONSTRUCTION CORPORATION, Appellee.
No. 71-907.
District Court of Appeal of Florida, Third District.
June 27, 1972.
Rehearing Denied August 4, 1972.
*14 Joseph A. Wanick, City Atty., and Lionel Barnet, Asst. City Atty., for appellant.
Cristol, Rose & Aldrich, Miami, for appellee.
Before BARKDULL, C.J., and CHARLES CARROLL and HENDRY, JJ.
HENDRY, Judge.
Appellant-defendant City of Miami Beach seeks review of a judgment for money damages in the amount of $2,666.45, plus 6% interest, entered in a non-jury trial. Appellee-plaintiff Fryd Construction Corporation sued for breach of a construction contract. The dispute concerns whether installation of eight rows of aluminum seating was an "extra" or was a contract item.
In March, 1969, the parties entered into a building contract for the construction of a concrete grandstand in Flamingo Park. In the contract detailed construction matters were set forth.
In May, 1969, the appellee wrote the city that the specifications for the project called for only one row of aluminum seating, and if the city desired additional rows of aluminum seating, the cost would be $2,666.45. The city replied that the contract called for installation of full capacity aluminum seating, so that there should be no further cost to the city. By an agreement reached during May and June, 1969, all the aluminum seats were installed, but without prejudice to the rights of either party and without prejudice to either party bringing legal action.
In November, 1969, a proposed contract change order number eight was prepared by the Public Works Department to the effect that the city's plans did not describe fully the extent of the aluminum seating to be furnished. The proposed contract change order noted that the legal opinion at that time was that the prior city's position was legally indefensible.
The appellee has characterized this document as an admission against interest. At oral agreement the appellee did not treat it as an amendment to the contract supported by consideration. The parties state that the seats had already been installed pursuant to the May-June, 1969 agreement by November.
At the non-jury trial, expert witnesses testified as to their interpretation of the original written contract, particularly as respects the specifications which it contained. A clause was § 10.19(G):
"G. With respect to any parts of the work for which only a portion is completely drawn, detailed or specified, or which are indicated on the Plans for any particular area or location, all like work shall conform to the portion so drawn or detailed and shall be deemed to continue throughout like areas or locations unless distinctly shown or noted otherwise."
The trial court awarded appellee full damages, plus legal interest.
The city urges that the proposed change order is not supported by consideration because of the familiar rules that performance of a pre-existing duty is not legal consideration and that past consideration is not legal consideration. It further argues that the public works department lacked the authority to make this type of change. It urges that the proper authority was the city engineer, who did not sign the proposed *15 contract change order number eight. It even suggests, which suggestion the city admits is tenuous, that the city manager or council be required to approve or ratify this document. The provision reads:
"4.3 Alteration of Plans or of Character of Work  The right is reserved for the Engineer to make from time to time such alterations in the Plans or in the character of the work as may be considered necessary or desirable to complete fully and perfectly the proposed construction and such alterations shall not be considered as a waiver of any conditions of the contract, nor to invalidate any of the provisions thereof. Should such alterations in the Plans result in an increase or decrease of the quantity of work to be performed, and should added or eliminated work be of the same character as that shown on the original plans, the Contractor shall accept payment in full at the Contract Unit Price for the actual quantities of the work done. Should an alteration be a change in the character of the work, an equitable sum to be agreed upon, in writing by the Contractor and the Engineer before such work is begun, shall be added to or deducted from the Contract Price, as the case may be. No allowance will be made for anticipated profits."
"If A is bound by a contract with B to erect a building or deliver goods or render any other performance at an agreed price, it is generally held that his performance of that duty is not a sufficient consideration for a new promise of B to pay an increased compensation or to do anything in addition to payment of the price as originally agreed." 7 Corbin, Contracts § 175, p. 123 (1963). While the general rule has been criticized and exceptions created, one justification for its continued existence is that a contractor may purposely submit a low bid in order to secure the contract, but then refuse to perform, after it is too late to obtain another contractor without loss or inconvenience, in order to induce a promise to pay more. 7 Corbin, Contracts § 171, pp. 105-106 (1963). Where public contracts are involved this justification for the continued adherence to the pre-existing duty rule acquires an added dimension because public officials and public coffers are intimately connected with these projects. We do not hesitate to add that in the instant case the record reveals only a good faith effort to reach an amicable settlement to a good faith dispute as to the interpretation of contract specifications.
In presenting its argument, the city maintains that the construction company seeks compensation for an item as an "extra," but the item was originally called for in the contract. The city contends that it adhered to its original position that the specifications called for all rows to have aluminum seating. Therefore, it would have this court conclude that the pre-existing duty rule would preclude establishment of an executory accord, an accord and satisfaction or a substituted contract. We express the view that such a conclusion should be drawn. The city also appears to argue that the dispute did not involve an unliquidated claim as to which the validity was actually in doubt, so that the contract could not be discharged through the legal vehicles of an executory accord, accord and satisfaction or a substituted contract. As we have said, the contractor did base his claim on a good faith dispute, and therefore we reject this argument by the city.
We further agree with the contentions of the city that the contract specified that contract changes would be authorized by the city engineer. The city engineer signed the seven earlier proposed contract changes, but did not sign proposed contract change number eight, as called for in the contract.
Therefore, the judgment appealed is reversed and remanded with directions to enter a judgment for the defendant city.
Reversed and remanded with directions.