**AIR PRODUCTS AND CHEMICALS, INC., Plaintiff-Appellee,**

v.

**The LOUISIANA LAND AND EXPLORATION COMPANY, Defendant-Appellant.**

**The LOUISIANA LAND AND EXPLORATION COMPANY, Plaintiff-Appellant,**

v.

**AIR PRODUCTS AND CHEMICALS, INC., Defendant-Appellee.**

**Nos. 85–3999, 86–3018.**

United States Court of Appeals, Eleventh Circuit.

Dec. 31, 1986.

Peter J. Winders, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for defendant-appellant.

Robert P. Gaines, Beggs & Lane, Pensacola, Fla., for defendant-appellee.

Before RONEY, Chief Judge, GODBOLD, Circuit Judge, and ATKINS [*], Senior District Judge.

ATKINS, Senior District Judge:

The Louisiana Land and Exploration Company ("LL & E") appeals from an order granting Air Products and Chemicals, Inc.'s ("Air Products") motion for summary judgment in a declaratory judgment action involving consolidated cases. This court must resolve two issues on appeal. First, we must determine whether LL & E can apply the substitute fuel index retroactively, pursuant to the terms of the contract with Air Products, to the first period of 1980, and the first and second periods of 1981. Second, we must review the district

[*] Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

court's finding that Air Product's payment constituted an accord and satisfaction of the disputed claim.

After carefully reviewing the record, the briefs, and having considered counsels' oral arguments, we find that the district court properly interpreted the contract to permit retroactive application of the substitute index; however, the district court incorrectly construed the "pendency period" described in the contract. Further, we find that the trial court erred in holding that the parties had entered into an accord and satisfaction. Finally, we remand the case to the district court for consideration of the affirmative defenses of waiver and estoppel.

## I STATEMENT OF FACTS

On June 1, 1974, LL & E entered into a contract with Air Products under which Air Products agreed to buy certain ethane gas produced by LL & E. The parties agreed that the price for the ethane would be determined for each six month period beginning with the second period of 1976[1] according to the formula identified in section 5.9 of the contract[2] which required Air Products to pay the higher of the base price, or an inflation escalation price, or a fuel index price which was to be established with reference to posted prices for a certain grade of fuel oil in *Platt's Oilgram,* a trade publication. Furthermore, in section 5.3 of the contract, the parties agreed that if Platt's Oilgram discontinued its postings, a substitute method of computing the fuel index would be determined in accordance with section 5.12.[3] This section provides that the old price remains in effect during the determination of a substitute index. However, once this substitute is determined, the price is increased retroactively.

1. Earlier pricing periods are irrelevant to this appeal.

2. Section 5.9 of the contract provides:

   The price to be paid by Buyer to Seller for sales and purchases of ethane pursuant to this Agreement for each Six Month Period beginning with the Second Six Month Period of 1976, during either the Initial Contract Period or the Second Contract Period shall be the higher of the following:

   a. The price set forth in Section 5.5 hereof times the ration of the Gulf Coast Fuel Index for the Six Month Period immediately preceding the Six Month Period for which the price is to be determined, to the Gulf Coast Fuel Index for 1974. For example, the Price to be paid for ethane delivered during the Second Six Month Period of 1976 shall be computed as follows:

$$\text{Ethane Price for Second Sixth Month Period of 1976} = \text{Base Price} \times \frac{\text{Gulf Coast Fuel Index for First Six Month Period of 1976}}{\text{1974 Gulf Coast Fuel Index}};$$

   b. The price set forth in Section 5.5 hereof times the ratio of the Composite Average Index for the Six Month Period immediately preceding the Six Month Period for which a price is to be determined, to the Composite Average Index for 1973. For example, the price to be paid for ethane delivered during the Second Six Month Period of 1976 shall be computed as follows:

$$\text{Ethane Price for Second Sixth Month Period of 1976} = \text{Base Price} \times \frac{\text{Composite Average Index for First Six Month Period of 1976}}{\text{1973 Composite Average Index}};$$

   or

   c. Base Price.

3. Section 5.12 of the contract provides (in pertinent part):

   5.12 In the event publication of the Consumer Price Index or the Wholesale Price Index is discontinued, or the method of computing any said Indices is changed and Seller and Buyer Cannot agree to substitute an index or indices or alternate method of computing the increase in price, a substitute index or indices shall be determined by arbitration.... Pending determination of the substitute index or indices by the parties and/or arbitrators, performance of obligations under this Agreement by both parties shall continue and Buyer shall pay for ethane delivered at the last agreed upon price. Upon determination of a substitute index or indices, such index or indices shall be retroactively used to determine what price would have been paid throughout the pendency period and Buyer or Seller, as the

In 1975, *Platt's Oilgram* ceased to publish prices of the particular grade fuel oil used in calculating the fuel index. Therefore, Air Products wrote LL & E early in 1976 regarding the selection of a substitute, but the parties did not reach an agreement. This problem, however, was largely ignored by both parties until it became apparent the fuel index price was the highest.

Until 1980, economic conditions were such that the inflation formula always provided the highest price. As conditions changed, Air Products' management realized that a fuel index price would control, and set up a reserve fund for the projected increased costs. In April, 1980, Air Products personnel prepared an internal memorandum which recognized that LL & E had apparently made an oversight regarding the selection of a substitute fuel index and noted the potential retroactive application of the substitute fuel index.[4]

On December 29, 1981 Air Products personnel noted that a substitute fuel index had not yet been selected by the parties. Moreover, they estimated that the application of a substitute fuel index to the second price period of 1981 would increase Air Products' costs by almost one million dollars. On that same day, LL & E wrote to Air Products and requested that the parties meet to discuss the selection of a substitute fuel index to replace the postings previously published in *Platt's Oilgram*. Air Products received this letter January 4, 1982, and circulated it with a memorandum acknowledging that LL & E's realization would dramatically increase the cost of ethane.

Following Air Products' receipt of LL & E's letter of December 29, 1981, the parties began to negotiate the selection of a substitute fuel index. At about the same time, LL & E sent out its invoices for the last six months of 1981. The invoices sent to Air Products contained a new notation—"Corrected invoice will be sent pending agreement on an appropriate pricing index." Mr. Notary of Air Products was notified of the new language, so he consulted his legal department. As a result, a letter was sent to LL & E along with the payment for the invoices. The letter indicated that the fuel price adjustment could not be applied retroactively and stated that the enclosed check "fully and completely fulfills Air Products payment obligations under the contract for the period July 1981 through December 1981."

## II THE MOTIONS FOR SUMMARY JUDGMENT

Prior to filing their motions for summary judgment, the parties stipulated that only seven of the six month pricing periods under the contract would be affected by the application of the substitute fuel index, and agreed to the amount involved for each period. The pricing periods included the first six months of 1980, the first six months of 1981, the second six months of 1981, and each period after January 1982.

The district court determined that the contract did *not* provide for retroactive application to the first six months of 1980 or the first six months of 1981, but that it *did* apply to the second six months of 1981 because LL & E wrote Air Products regarding the substitute fuel index on De-

---

case may be, shall pay the difference to the other party.

4. The memorandum states in part:
   This memo is to inform you of a potential retroactive adjustment for ethane for the period of 1 January through 30 June, 1980.
   Ethane is purchased from Louisiana Land & Exploration Company. The contract contains two possible escalation provisions; a composite average of the Consumer and Wholesale indexes and the Gulf Coast Fuel index. Louisiana Land & Exploration is allowed to bill at the higher index. Currently, Ethane is being accrued based on the composite average at $2.13/MMBTU. Due to the increase in oil prices, the Gulf Coast Fuel index would yield a higher price to Louisiana Land & Exploration. They do not appear to be monitoring their contracts closely and have not elected to change indexes. If they discover their mistake and change the index anytime before 1 July, the average price of ethane will increase $.20/MMBTU retroactively to 1 January. The effect of this through March would be $186,000 and has been accrued at the group level.

cember 29, 1981. The district court did not address the affirmative defenses of waiver or estoppel, but commented on the delay in negotiations observing that "the most elementary understanding of the free enterprise system leads to the logical assumption that a corporation for profit will act in its own best interest. LL & E acted inconsistently with that assumption, to its detriment." Therefore the court held that there was no duty on Air Products' part to bring the matter to LL & E's attention, and that the retroactivity provisions of the contract extended "back only to the period in which [LL & E] notified [Air Products] that a new index needed to be determined, that is, the six-month pricing period from July to December, 1981." The court then requested additional argument on the accord and satisfaction defense, which was applicable only to the July—December 1981 pricing period. After additional briefing and argument, the district court determined that the parties had entered into an accord and satisfaction which barred LL & E's recovery for the second six months of 1981.

## III DISCUSSION

### A. Retroactive Application of the Substitute Fuel Index

■ The parties acknowledge that the last agreed upon price prevails pending the determination of a substitute index. They disagree, however, on the retroactive application of the substitute index. The resolution of this conflict depends upon the proper interpretation of the "pendency period" found in section 5.12 of the contract."

Florida follows many of the traditional rules of contract interpretation.[5] First, the court should adopt the plain meaning of the language used. *Ashland Oil & Refining Co. v. The State Road Department of Florida,* 343 So.2d 878 (Fla.Dist.Ct.App. 1977); *Florida Boca Raton Housing Assn.*

*v. Marqusee Associates of Florida,* 177 So.2d 370 (Fla.Dist.Ct.App.1965). When the court reviews a contract, it must consider the objects to be accomplished by the parties when they entered into the contract. *See Wright & Seaton, Inc. v. Prescott,* 420 So.2d 623, 629 (Fla.Dist.Ct.App. 1982). If confronted with ambiguous language susceptible of two constructions, the court should adopt that construction which conforms with logic and reason. *See id.* In this manner, the court best effectuates the intent of the parties.

The district court's construction of the contract appears to serve as a punishment for LL & E's poor business practice. Yet, when the parties drafted the contract, they agreed that the price *"shall be" the higher* of the three formulas. The price was not to be established at LL & E's option using the most profitable formula. Instead, under the express terms of the contract, the pricing system was mandatory. Moreover, section 5.12 provides that "pending determination of the substitute index" the price remains the same, but "[u]pon determination of a substitute index or indices, such index or indices shall be retroactively used to determine what price would have been paid throughout the pendency period...." Thus, contrary to the district court's construction, there is no indication that "determination" means active negotiation over the substitute index. Instead, the terms of the contract suggest that when an index is no longer published, the previous price will remain in force until the parties select a new index. Then, the parties apply the new index retroactively to the period when the original index ceased publication.[6]

### B. Accord and Satisfaction

■ "An accord and satisfaction is the substitution of a new agreement between the parties in satisfaction of a former one, and arises when the agreement is executed

---

5. The contract provides that Florida law controls.

6. The district court's order suggests that Air Products must pay LL & E based upon the new fuel index price for the disputed periods after January, 1982, but the order merely says that LL & E's motion is denied. Clearly, Air Products must pay LL & E the price based upon the substitute index for the periods beginning in January, 1982.

and satisfaction has been made." 10 Fla. Jur.2d *Compromise, Accord, and Release* § 1 (1979) (footnotes omitted). This affirmative defense involves a two-step approach. First, the parties must have fully intended to settle an existing dispute by forming a superseding agreement. Second, the parties must prove actual performance of the new agreement to satisfy the prior obligation. *Gaslin v. Racal Data Communications, Inc.*, 468 So.2d 390, 392 (Fla.Dist. Ct.App.1985). In short, under Florida law an accord and satisfaction must contain the elements of a normal contract, which include offer, acceptance, and consideration. *See* 10 Fla.Jur.2d *Compromise, Accord, and Release* § 4 (1979).

LL & E argues that Air Products' defense fails because there was no meeting of the minds sufficient to establish an accord and satisfaction. However, this particular contention is without merit. Air Products attached a letter with the payment for the second period of 1981. This letter indicated that the amount due under the invoices was in dispute and that the payment was intended to be a final payment for that period.

The problem with Air Products' defense of accord and satisfaction is that it concerns a claim which is partly undisputed and liquidated and partly disputed and unliquidated. Here, neither Air Products nor LL & E contests that Air Products owed at least the previously established price. They merely contested the retroactive application of the substitute index which resulted in a larger debt. Thus, Air Products only offered to pay for the undisputed part of the claim in satisfaction of the entire obligation. "Where a part of a claim is undisputed and liquidated and a part is disputed and unliquidated, the authorities are in conflict upon the question whether payment of the undisputed part of the claim is an accord and satisfaction if received in discharge of the whole." 10 Fla. Jur.2d *Compromise, Accord, and Release* § 7 (1979). The predominant view, however, is that "payment of an undisputed claim is not consideration for the discharge of another distinct and independent claim...." 1 Am Jur.2d *Accord and Satisfaction* § 34 (1962). Furthermore, under Florida law, the payment of a preexisting debt does not constitute consideration. *See City of Miami Beach v. Fryd Construction Corp.*, 264 So.2d 13, 15 (Fla.App.1972).

## IV   CONCLUSION

The district court correctly construed the contract to require retroactive application of the substitute index. Yet, the court found that the pendency period began in the second period of 1981. This interpretation appears to be based on the court's dissatisfaction with LL & E's poor business practices. *Platt's Oilgram* was discontinued in 1976 and the parties failed to agree upon a substitute index for many years. Because of the mandatory nature of the price structure under the contract, we hold that the pendency period commenced in 1976. We further hold that there was no accord and satisfaction because the superseding agreement failed for a lack of consideration. Thus, we AFFIRM in part, REVERSE in part, and REMAND for consideration of the affirmative defenses of waiver and estoppel.