382 So.2d 311 (1979)
CITY OF BARTOW, Petitioner,
v.
PUBLIC EMPLOYEES RELATIONS COMMISSION and Teamsters Local No. 444, Respondents.
No. 78-2296.
District Court of Appeal of Florida, Second District.
September 14, 1979.
*312 Thomas M. Gonzalez and Lucius M. Dyal, Jr. of Shackleford, Farrior, Stallings & Evans, Tampa, for petitioner.
William E. Powers, Jr., General Counsel, and C. Anthony Cleveland, Asst. Counsel, Tallahassee, for Public Employees Relations Commission.
SCHEB, Judge.
The City of Bartow seeks review of a final order of the Public Employees Relations Commission (PERC) finding the City guilty of unfair labor practices. PERC ruled that the City violated Sections 447.501(1)(a) and (b), Florida Statutes (1977),[1] by terminating the employment of Marion O. Ott, a Fire Department employee. The City contends that a prior ruling of its Civil Service Board should have controlled PERC's decision, and argues alternatively that there is not substantial competent evidence to support PERC's order. We have jurisdiction. § 447.504, Fla. Stat. (1977). From our review we conclude that, while PERC did have jurisdiction, its implicit finding that a causal connection existed between Ott's dismissal and his union activities is not supported by substantial competent evidence. Therefore, we reverse.
In 1977 Bartow's fire department consisted of a fire chief, his assistant, sixteen fire drivers, and a mechanic. The drivers maintained the Department's trucks, drove them to fires, and operated the pumps and other equipment while volunteers aided in fighting fires. Each of three shifts had a supervisor. Ott had been a fire driver for approximately two years in March 1977 when he and other employees became interested in unionizing the Department. As a result they asked their fellow employees to sign cards authorizing PERC to conduct an election to determine if a majority of the employees wished to be represented by the Teamsters Union. Feelings between those supporting the union and those opposing it ran high, and over the next few months the atmosphere in the Department became tense.
Ott's shift supervisor testified that, on June 1, 1977, he ordered Ott to report to a training fire and Ott refused to go. As a result Fire Chief Tim V. Pitts suspended Ott. On June 4, after he received reports *313 of two other instances in which Ott had antagonized his supervisor on June 1, Pitts fired Ott on the ground of insubordination.
Ott petitioned the City of Bartow Civil Service Board for administrative review of his discharge. The Board conducted a hearing at which Ott testified, and found that Ott's termination was for good cause and upheld it. Ott did not seek judicial review of the Board's action. Teamsters Local No. 444, however, subsequently filed an unfair labor charge against the City. After investigation, PERC filed a formal complaint charging that the City had improperly dismissed Ott in retaliation for his union activities. The City denied this charge and filed affirmative defenses that PERC was without jurisdiction and that the ruling of the Civil Service Board was res judicata. Following a hearing at which the principals testified, PERC's hearing officer concluded that although Ott was insubordinate, his dismissal was also influenced by his union activity and the desire of the City to discourage unionization. The officer thus concluded that the City was guilty of an unfair labor practice. The Commission adopted the hearing officer's recommended order as augmented by its own conclusions, and entered its final order requiring the City to reinstate Ott with backpay.
The City raises several points on appeal, but we need discuss only two. We first address its contention that PERC was without jurisdiction to make a determination in this cause because of the prior adjudication of the Bartow Civil Service Board. The City contends that the Board's action barred the Commission from even considering whether Ott's discharge resulted from an unfair labor practice on the ground that the Board's adjudication was res judicata. We disagree. The issue before the Civil Service Board was whether Ott was insubordinate and not whether the City was guilty of an unfair labor practice in terminating his employment. Therefore, while the principle of estoppel by judgment applied to the Board's determination that Ott was insubordinate, it did not apply to PERC's contention that the City had committed an unfair labor practice. Estoppel by judgment bars only those matters actually litigated and determined in an initial action. Gordon v. Gordon, 59 So.2d 40 (Fla. 1952); see also Jet Air Freight v. Jet Air Freight Delivery, Inc., 264 So.2d 35 (Fla. 3d DCA 1972); Board of County Commissioners v. Rockmatt Corp., 231 So.2d 41 (Fla. 3d DCA 1970). Accordingly, while the Commission was estopped from rehearing the issue of Ott's insubordination, it had jurisdiction to determine whether the City had committed an unfair labor practice. See PERC v. Fraternal Order of Police, Local Lodge No. 38, 327 So.2d 43 (Fla. 2d DCA 1976).
We now turn to the more critical issue of whether there was substantial competent evidence to support PERC's finding that the City was motivated by anti-union sentiment in firing Ott. To be sustained, the finding of PERC, like the findings of other administrative bodies, must be based on substantial competent evidence. § 120.68(10), Fla. Stat. (1977); De Groot v. Sheffield, 95 So.2d 912 (Fla. 1957); Austin v. Gordon, 333 So.2d 912 (Fla. 2d DCA 1976). In determining whether substantial competent evidence exists, we recognize that it is inappropriate for this court to resolve conflicts in the testimony adduced before the PERC hearing officer. Pauline v. Lee, 147 So.2d 359 (Fla. 2d DCA 1962). We are also aware that proof of unfair labor practices frequently must rest upon circumstantial evidence and that we must examine the proceedings before PERC in the light most favorable to its findings. Pasco County School Board v. Florida PERC, 353 So.2d 108 (Fla. 1st DCA 1977).
The evidence revealed that Bartow's fire department was one of modest size and operated informally from the standpoint of discipline and orders. Direct orders were seldom given. The testimony disclosed that on June 1, 1977, Ott was assigned to a work shift under Supervisor Jerry Morgan. While on duty Morgan instructed the shift drivers to roll some fire hoses. Ott indicated that he would not do so. Soon thereafter, however, he joined the other drivers *314 in completing the task. Later in the day Ott belligerently asked Morgan where he was taking the truck which had been assigned to Ott. Morgan replied that he had been instructed by Chief Pitts to take the truck to a training fire.
Morgan proceeded to the fire. When it was almost out, Chief Pitts sent him back to the station with directions to send two men to watch the smoldering remains. Ott and Bruce Monroe were the only fire drivers at the station. At the PERC hearing, Ott and Monroe testified that when Morgan arrived at the station, Monroe asked if he and Ott were to go to the fire. On the other hand, Morgan testified that he ordered Ott and Monroe to report to the fire. In either event, Ott replied "f____ no, I'm not going," and turned and walked away. The clear implication of Ott's statement was that, even if Morgan ordered him to report to the fire, he would not obey the order. Morgan then told Ott to roll hoses while he and Monroe returned to the fire scene.
When Chief Pitts learned of Ott's remarks to Morgan regarding the fire, he suspended Ott for three days. It was during this suspension that Pitts was informed by his assistant chief of Ott's recalcitrance with regard to rolling hoses and to Morgan's use of "his" truck. At that point Chief Pitts fired Ott.
At the time of Ott's dismissal Chief Pitts was fully aware of the union activities which had begun a few months before Ott's dismissal. He had also let the fire drivers know that he did not think unionization was a good idea.
The hearing officer's recommended order, adopted by PERC, included the following findings:
7. On June 1, 1977, Ott was ordered to report to a Training fire, and refused to go. Earlier on the same day Ott was slow in obeying an order to roll fire hose and had belligerently demanded to know why his supervisor was taking his assigned truck to the training fire.
8. The Fire Department suffered from a lack of discipline and command respect at the time of the incidents for which Ott was suspended and terminated.
9. Since Chief Pitts' assumption of command of the Fire Department, no other employees of the Fire Department had been discharged for insubordination prior to Ott, even though such insubordination existed.
10. At the time of his discharge, the Chief was aware of Ott's union sympathies and activities.
11. Very few direct orders were ever given in the Bartow Fire Department and the order to go to a training fire which Ott was allegedly suspended and discharged for violating was not stated as a direct order. On the contrary, Ott's supervisor offered him an alternative duty to carrying out the request to go to the fire.
12. Moreover, the testimony and demeanor of the witnesses indicate that the City was waiting for the first opportunity to create an example of the City's response to collective bargaining, i.e., a change in disciplinary procedures, and that Ott was used as such an example.
13. Ott's termination was not totally related to his insubordination, but it was also influenced by his union activity and by the desire of the City to discourage union activity. Ott's support of the union and the union's presence was a substantial or motivating factor [sic] in determining whether he should be discharged.
In its final order PERC augmented these findings with the following:
1. At the time of Ott's termination there was an informal atmosphere in the fire department and employees would grumble and complain, even to the point of initially refusing to carry out a supervisor's request. On such occasions the request was reiterated to the recalcitrant employee. Jerry Morgan, Ott's shift supervisor, never issued Ott a direct order to go to the fire scene.
2. Tim V. Pitts, the Respondent's fire chief, told at least one employee in connection with union activity, "Well, you're really shitting in your nest this time," and also told fire department employees *315 on one occasion that they had better straighten up or be replaced by volunteers. Pitts told Ott at the time he was suspended that "just because you guys are going union doesn't mean you don't have to take orders." At the time he initially suspended Ott, Pitts was "terribly upset," because of the Petitioner's organizational activity and was bothered by the situation.
We think that PERC's findings can be fairly summarized as stating that Ott's termination was based on his union activities. We fail, however, to find any nexus between Ott's termination and his union activities. Moreover, the evidence does not disclose any improper motivation on the part of Chief Pitts for his suspension or subsequent termination of Ott. Whether the fire chief's concern over unionization was a matter of any consideration in his actions is only speculative. The record clearly shows that Ott's only activity as a union advocate was informally discussing the desirability of a union with other drivers. The primary organizers in the department, one of whom was subsequently promoted to shift supervisor, were two other drivers who solicited card authorizations from fellow employees.
We recognize that the record does reveal other problems in the Department as the hearing officer noted. These related to attitude problems and the Department's failure to discipline drivers when they responded to orders in the same manner that Ott had. Understandably, the conflict over the issue of unionization exacerbated these problems. Even when unionization is at issue, however, an employee charged with vital public safety duties cannot refuse to carry out legitimate orders of his supervisor.
From the evidence cited in this opinion, one can readily understand Chief Pitts' determination that Ott was insubordinate. We think the language in Florida Steel Corp. v. NLRB, 529 F.2d 1225 (5th Cir.1976), is apropos. There the court said:
[The discharged employee] did not suffer discrimination because of any union activity. The mere fact that he had signed a union card afforded him no protection for his flagrant insubordination. Section 7 rights are a shield against employer retaliation, not a sword with which one may threaten or curse supervisors. Neither threats of violence nor insubordination constitute protected activities.
Id. at 1234 (citation omitted).
Finally, the Commission noted in its augmented findings that Chief Pitts had made several anti-union comments to the drivers. This does not support PERC's conclusion, however, that Pitts dismissed Ott because of his union activities. The Chief retained the right to express an opinion on unionization. His exercise of that right did not constitute and was not evidence of an unfair labor practice as long as he made "no promise of benefits or threat of reprisal or force." § 447.501(3), Fla. Stat. (1977). As we indicated above, we find the record devoid of any evidence of threats or coercion by the City or Pitts to deter Fire Department employees from unionizing. The fact that a primary organizer was subsequently promoted to shift supervisor belies the contention that the City was inalterably opposed to unionization. There was no testimony that Chief Pitts' observations on unionization had been interpreted by anyone as a threat or coercive tactic. And while on one occasion Pitts told the fire drivers that they had better straighten up or they would be replaced by volunteers, there was no evidence that such admonition was related to union activity. "Where good cause for [a] discharge is shown, the mere fact that anti-union animus existed on the part of the employer does not, without more, make the discharge unlawful." Syncro Corp. v. NLRB, 597 F.2d 922 n. 7 (5th Cir.1979). This evidence does not support PERC's finding of a causal connection between Ott's union activities and his dismissal. Thus, PERC erred in ordering his reinstatement. Id.; see also NLRB v. Florida Steel Corp., 586 F.2d 436, 448 (5th Cir.1978).
*316 Accordingly, we vacate the order issued by the Public Employees Relations Commission on November 30, 1978.
GRIMES, C.J., and BOARDMAN, J., concur.
NOTES
[1] Unfair labor practices.

(1) Public employers or their agents or representatives are prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
(b) Encouraging or discouraging membership in any employee organization by discrimination in regard to hiring, tenure, or other conditions of employment.