Barbara **BARRINGTON**, Plaintiff,

v.

**FLORIDA DEPARTMENT OF HEALTH**, Defendant.

No. 6:99–CV–638–ORL–99C.

United States District Court,
M.D. Florida,
Orlando Division.

April 21, 2000.

---

## ORDER

WISEMAN, Senior District Judge.

Before the court is the Report and Recommendation of Magistrate Judge Glazebrook in which he recommends that the Motion of defendant for Summary Judgement be granted. Also before the court is a letter from plaintiff in which she states that she is not filing the same as "a letter of objections." The court has, however, considered the same as if it were objections filed to the Report and Recommendation.

From a review of the entire case it appears that the plaintiff has fully litigated the issues she raises in this Title VII suit before the Florida Public Employment Relations Commission and on appeal therefrom to the Florida District Court of Appeals. The Magistrate Judge's recommendation that this suit is barred by the doctrines of res judicata and collateral es-

toppel is correct in fact and law. The Report is adopted by this court.

For the reasons stated in the Report of the Magistrate Judge, summary judgement is granted to the defendant and this case is dismissed.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration at a hearing on March 3, 2000, on the following motion:

Plaintiff Barbara Barrington ("Barrington"), who is appearing *pro se,* brings this action against the defendant, the Florida Department of Health ("Department of Health"), alleging wrongful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17. The case is presently before the Court on the Department of Health's motion for summary judgment [Docket No. 13] to which Barrington has responded [Docket No. 15]. Following a thorough review of the case file, relevant law, and the parties' arguments, the Court finds that the doctrines of collateral estoppel and res judicata bar Barrington's claims. The Florida Fifth District Court of Appeals ("Fifth DCA") has previously affirmed the Florida Public Relations Commission's ("PERC") decision upholding Barrington's termination. Accordingly, it is **RECOMMENDED** that the defendant's motion for summary judgment be **GRANTED,** and that the case be **DISMISSED.**

## I. *BACKGROUND*

The Department of Health employed Barrington beginning in September 1996 as a Health Support Technician. Barrington provided "direct observed therapy treatment," which meant that she delivered doctor-prescribed medication to the Department of Health's clients, and watched them ingest the medication. By letter dated May 8, 1998, the Department of Health notified Barrington that she was being dismissed for threatening and/or abusive language and disruptive conduct.

On May 20, 1998, Barrington appealed her dismissal by filing a complaint with the Florida Public Employment Relations Commission ("PERC"). On July 10 and 22, 1998, hearing officer M. Linville Atkins held a full evidentiary hearing on Barrington's claims. Counsel represented the parties and had the opportunity to present and cross-examine witnesses. During the hearing, Barrington denied all of the Department of Health's charges, and claimed that the proffered reasons for termination were merely a pretext for illegal racial discrimination and retaliation. The hearing officer's August 31, 1998 recommended order rejected Barrington's claims and upheld the Department of Health's decision to dismiss Barrington from employment. *See* Docket No. 13, Exhibit B; *Barbara Barrington v. Department of Health,* Case No. CS–98–223 (August 31, 1998). The PERC adopted the hearing officer's order and dismissed Barrington's appeal on October 30, 1998.

Barrington then chose to appeal the PERC's order to the Fifth DCA. On September 7, 1999, the court affirmed the PERC's decision without published opinion. *See Barbara Barrington v. Department of Health,* Case No. 99–1486, 1999 LEXIS 12255 (Fla.Dist.Ct.App. Sept. 7, 1999).

In the meantime, on April 1998, Barrington filed charges of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). On May 28, 1999, after receiving a right to sue letter, Barrington brought this action in the United States District Court, alleging racial discrimination and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e–17. Docket No. 1. On June 1, 1999, Barrington filed an amended complaint, claiming additional injuries from emotional distress. Docket No. 4. On No-

vember 30, 1999, the Department of Health filed its motion for summary judgment, claiming that Barrington had fully litigated her claims before the PERC, and is now barred from relitigating the matter in federal court by the doctrines of collateral estoppel and res judicata. *See* Docket No. 13 at 12.

## II. *THE LAW*

### A. Standard of Review on Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox,* 64 F.3d 590, 593—94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> in deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox,* 64 F.3d 590, 594 (11th Cir.1995), quoting *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 477 U.S. at 251–52, 106 S.Ct. 2505. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir.1987). If the determi-

nation of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. 833 F.2d at 1531.

## B. Full Faith And Credit To State Court Judgment

Congress requires federal courts to afford the same full faith and credit to state court judgments that would be provided by the courts of that state. *See* 28 U.S.C. § 1738 (1994).[1] In accordance with this mandate, federal courts have consistently applied the doctrines of res judicata and collateral estoppel to bar relitigation of issues previously decided in state courts. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). The two doctrines serve the same purpose in different ways. Res judicata, or claim preclusion, means that a final judgment on the merits bars the parties or those in privity with them from relitigating issues that were or could have been raised in the prior action. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). Collateral estoppel, or issue preclusion, requires that once a court decides an issue necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Section 1738 requires application of both doctrines. *See University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

These principles are integral to our judicial system because they "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v.*

*McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (holding that preclusion rules apply in 1983 actions). Respecting the finality of state court judgments also serves to "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *McCurry*, 449 U.S. at 96, 101 S.Ct. 411. Depriving state judgments of finality not only violates basic tenets of comity and federalism, but also reduces the incentive for states to work towards effective and meaningful antidiscrimination systems. *Kremer*, 456 U.S. at 478, 102 S.Ct. 1883.

■ The Supreme Court has specifically held that Title VII claims are not immune from the strictures of § 1738. *See Kremer*, 456 U.S. at 476, 102 S.Ct. 1883. Therefore, a state court ruling on a claim of employment discrimination may bar a federal court from revisiting the issue under the guise of a Title VII claim. Similarly, rules of preclusion apply when a state administrative agency's rejection of a discrimination claim is affirmed by a state appellate court. 456 U.S. at 463, 102 S.Ct. 1883. Section 1738 requires that the federal courts give full faith and credit to a state court decision upholding a state administrative agency's rejection of an employment discrimination claim, if two criteria are met: 1.) the court of the state from which the judgment emerged would grant preclusive effect to the judgment; and 2.) the party against whom preclusion is asserted had a full and fair opportunity in the state proceedings to litigate the claims. *Kremer*, 456 U.S. at 463, 102 S.Ct. 1883. Although the party claiming discrimination need not seek an appeal of the administrative decision, if she chooses to appeal, she is bound by the state court's judgment. This Circuit accords preclusive effect to

---

1. Section 1738 provides in pertinent part:
 The records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. Thus, state law determines whether and to what extent state court judgments preclude future litigation.

judicial appeals following state administrative proceedings in accordance with the state's preclusion law. *See Carlisle v. Phenix City Bd. of Educ.*, 849 F.2d 1376, 1378 (11th Cir.1988).

It is of no consequence that the state has ruled on discrimination in the context of a different legal proceeding. For instance, if an employee alleges discrimination during a hearing to review her termination, and a state tribunal upholds the administrative agency's rejection of that claim, a subsequent Title VII action may be barred. *See Burney v. Polk Community College*, 728 F.2d 1374 (11th Cir.1984). In *Burney*, a state administrative agency conducted hearings to determine whether to uphold the decision to dismiss the plaintiff, a tenured guidance counselor. At the hearing, the plaintiff claimed that school officials were motivated by racial discrimination in deciding to terminate him. Holding that the plaintiff's subsequent Title VII suit was precluded, the Eleventh Circuit found it dispositive that the agency had considered and decided upon the plaintiff's allegations of discrimination. The fact that the agency was not empowered to rule specifically on employment discrimination claims was immaterial. As the Eleventh Circuit explained,

> The destructive effect of stripping state court judgments of finality is equally applicable to state court judgments affirming that a claim of employment discrimination is unproven made by a state administrative agency other than that expressly authorized to determine employment discrimination claims.

*Id.* at 1379; *see also Elliott*, 478 U.S. at 790–91, 106 S.Ct. 3220; *Kremer*, 456 U.S. at 479–80, 102 S.Ct. 1883. As long as the party had a "full and fair opportunity" to present her claims, and the state proceedings comported with Fourteenth Amendment due process, the party may not relitigate the issue even as part of a different cause of action. *Gorin v. Osborne*, 756 F.2d 834, 837 (11th Cir.1985) (quoting *Kremer*, 456 U.S. at 480–82, 102 S.Ct.

1883; *see also Sharpley v. Davis*, 786 F.2d 1109 (11th Cir.1986). This is the essence of collateral estoppel. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). A losing litigant deserves no rematch after a defeat fairly suffered in adversarial proceedings on an issue identical in substance to the one she subsequently seeks to raise. 501 U.S. at 107, 111 S.Ct. 2166.

## C. Florida's Preclusion Law

Florida courts recognize the preclusive effect of state court decisions upholding administrative determinations. *See, e.g., In re Louis S. St. Laurent, II*, 991 F.2d 672 (11th Cir.1993); *School Bd. of Seminole County v. Unemployment Appeals Comm'n*, 522 So.2d 556, 556–57 (Fla.Dist. Ct.App.1988).

### 1. Collateral Estoppel

It is well established in Florida that parties are estopped from litigating issues that have already been decided in a prior administrating proceeding—apart from direct review of the agency decision by the Florida district court of appeals. *See Coulter v. Davis; City of Bartow v. Public Employees Relations Comm'n* 382 So.2d 311, 313 (Fla.Dist.Ct.App.1979). Under Florida law, the following elements must be established before collateral estoppel may be invoked: 1.) the issue at stake must be identical to the one decided in the prior litigation; 2). the issue must have been actually litigated in the prior proceeding; 3.) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and 4.) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case. *In re Yanks*, 931 F.2d 42, 43 n. 1 (11th Cir.1991); *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987); *In re Scarfone*, 132 B.R. 470, 472 (Bankr. M.D.Fla.1991); *see also Mobil Oil Corp. v. Shevin*, 354 So.2d 372, 374 (Fla.1977).

## 2. Res Judicata

█ It is also well established that Florida courts would accord res judicata effect to all issues which could have been raised before the district court of appeals on direct review of the administrative agency's decision. *See Key Haven v. Board of Trustees of Internal Improvement Trust Fund,* 427 So.2d 153, 157–58 (Fla.1982). *City of Bartow v. Public Employees Relations Comm'n,* 382 So.2d 311, 313 (Fla. Dist.Ct.App.1979). The general principle behind the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is absolute and puts to rest every justiciable issue, as well as every issue that has been actually litigated. *Gordon v. Gordon,* 59 So.2d 40 (Fla.1952); *Lake v. Hancock,* 38 Fla. 53, 20 So. 811 (1896). However, this principle only applies when the elements of res judicata are present and the doctrine is properly applied. *Gordon,* 59 So.2d at 43.

For the application of res judicata, Florida requires four factors to be present: 1.) identity of thing sued for; 2.) identity of the cause of action; 3.) identity of the parties; and 4.) identity of the quality in the person for or against whom the claim is made. *Casines v. Murchek,* 766 F.2d 1494, 1495 (11th Cir.1985) (applying Florida law). Where the second suit is upon the same cause of action and between the same parties as the first, res judicata applies. The first judgment is conclusive as to all matters which were or could have been determined. 766 F.2d at 44; *Prall v. Prall,* 58 Fla. 496, 50 So. 867, 870 (1909).

█ It is also a settled rule that, when the second suit is between the same parties but based upon a different cause of action from the first, the prior judgment will not serve as an estoppel except as to those issues actually litigated and determined. The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions. *Albrecht v. State,* 444 So.2d 8, 12 (Fla.1984) (citations omitted) superseded by statute on other grounds, as stated in *Bowen v. Florida Dep't of Envtl. Regulation,* 448 So.2d 566 (Fla.Dist.Ct.App.1984), approved and adopted, 472 So.2d 460 (Fla. 1985).

## III. *APPLICATION*

█ Barrington seeks to relitigate in federal court issues which she has already lost in the prior state court proceedings. The Public Employees Relations Commission ("PERC") hearing officer held a full adversarial hearing, in which the parties, through counsel, presented exhibits, presented witnesses, cross-examined the other party's witnesses, and fully participated in the hearing. *See* July 10, 1998 Partial Hearing Transcript, Plaintiff's Exhibit 1 ("Pltf.Exh.1") at 5. At the PERC hearing, the Department of Health claimed that Barrington had been dismissed for disruptive conduct and threatening and/or abusive language stemming from her conduct on March 16 and 25, and April 3, 1998. Specifically, the Department of Health alleged that Barrington had criticized the job performance of her supervisor, Barbara Carroll, and had refused Carroll's requests to perform job related tasks. The Department of Health also alleged that Barrington had shoved her supervisor Carroll, called her a "bitch," threatened to kill her, and had intimidated her with a vehicle. The Department of Health further claimed that Barrington had threatened Carroll's supervisor, Shirley Williams.

At the PERC hearing, Barrington denied all of the Department of Health's charges and claimed that the proffered reasons were merely a pretext for illegal discrimination and/or retaliation. *See* Pltf. Exh. 1 at 6–7, 77–78, 189–200. Barrington claimed that Carroll and Williams had fabricated their testimony concerning Barrington's alleged "misconduct" as retaliation for the EEOC complaint Barrington had filed some months before. Barrington had alleged workplace discrimination by

both women.[2] *See* Pltf.Exh. 1 at 77–78. Barrington's counsel argued that from 1996 through the filing of the October 1997 EEOC complaint, Barrington had had an exemplary performance record; but, that from October 1997 through the date of Barrington's May 8, 1998 termination letter, Barrington was harrassed, mistreated and retaliated against for the filing of the EEOC complaint in October 1997. Pltf. Exh. 1. at 77–78. Barrington asserted racial discrimination as a mitigating circumstance to her termination in her PERC hearing.

The PERC hearing officer permitted counsel to develop any testimony that would relate to Barrington's claim that her dismissal was the product of race discrimination and/or retaliation. *See* Pltf. Exh. 1. at 77–78. Barrington's counsel cross-examined Barrington's supervisor, Carroll, regarding her knowledge of Barrington's prior August 1997 charge of discrimination when she was making the decision to terminate Barrington. Ptlf.Exh. 1. at 77–78. Barrington's counsel also cross-examined Rodney Irvin, EEO coordinator, regarding Barrington's first EEOC complaint. Pltf.Exh. 1. at 345–367. Barrington submitted exhibits regarding her performance appraisal, her prior complaint of discrimination and the case summaries and the findings which resulted. Barrington also testified that she had had problems on a continuing basis, and that her supervisors had conspired to remove her since October 1987 when she filed her first EEOC complaint. Pltf.Exh. 1. at 198 – 199. Barrington stated that after she filed the October 1997 EEOC charge she "noticed that they [Department of Health] treated her worse." Pltf.Exh. 1 at 190. Barrington was permitted to testify in some detail as to how she was treated, which Barrington claimed was evidence of harassment, mistreatment, and retaliation. *See, e.g.,* Ptlf.Exh. 1. 190–200. Barrington was also allowed to introduce the testimony of several former co-workers concerning the work conditions at the Department of Health. In addition, Barrington was permitted to introduce the testimony of her cousin, Tammy Shavers, to refute the Department of Health's charges concerning Barrington's conduct.

After hearing all the evidence, the Public Employee Relations Commission found that the Department of Health had proven by a preponderance of the evidence that it had good cause for dismissing Barrington. *See* Docket No. 13, Exhibit B, *Barbara Barrington v. Department of Health,* Case No. CS–98–223 (August 31, 1998) ("PERC Decision"). In doing so, the hearing officer expressly rejected Barrington's claims of discrimination and/or retaliation. PERC Decision at 19 – 20, 23. The hearing officer did not find credible Barrington's testimony that Carroll and Williams had fabricated their elaborate story about Barrington's "misconduct" as a result of the first EEO complaint she filed. PERC Decision at 20. The hearing officer also did not find credible Barrington's and Shaver's testimony concerning Barrington's alleged conduct on April 3. PERC Decision at 19. Rather, after crediting Carroll's and Williams' testimony, the hearing officer found that:

> on April 3, in a fit of rage after learning that she was being investigated by the Agency [Department of Health] for her prior behavior, Barrington shoved her supervisor and then stated that she was going to "kick her ass" and kill her. Barrington then followed Carroll's vehicle as she left the building and pulled her truck close to Carroll's car at a light so that Carroll could see her mouthing the words, "Yeah, it's me bitch." In light of the these findings, I conclude that the Agency had cause to discipline Barrington for threatening and/or abusive language. Clearly, Barrington's remarks to Carroll while in her office constitute explicit, direct, and unambiguous

---

**2.** Barrington had filed a charge of race discrimination on October 15, 1997, against Carroll and Williams with the EEOC, which she subsequently dropped.

verbal threats to inflict physically, and were intended to cause Carroll to be frightened. Moreover, by shoving Carroll and pulling her truck close to Carroll's car, Barrington followed her verbal threats with acts of physical aggression meant to intensify or bolster Carroll's fear.

PERC Decision at 20 – 21. Accordingly, the hearing officer determined that the dismissal was within the range of penalties allowed for the offense of threatening and/or abusive language and that Barrington had failed to prove any mitigating factors, including racial discrimination and/or retaliation, that warranted a reduction in that discipline. PERC Decision at 22. The hearing officer found no evidence of disparate treatment or extraordinary circumstances that would support mitigation of the disciplinary action taken. PERC Decision at 23.

After a full review of the record, the Court finds that the parties and issues in this federal case are identical to those presented to the PERC hearing officer. Throughout the administrative hearing, Barrington claimed that the proffered reasons for her termination were pretexts for illegal race discrimination and/or retaliation. After providing Barrington with a full and fair opportunity to litigate her claims, the hearing officer rejected Barrington's contentions, thereby concluding that the Department of Health had proven that the reasons provided in support of Barrington's termination were not pretextual for illegal discrimination and/or retaliation. Barrington chose to appeal the decision to a Florida court.

On appeal, Barrington fully briefed her claims of error in the PERC finding. See Docket No. 15, Exhibit E. Specifically, Barrington claimed that she was not provided with the opportunity to be fully heard, because the PERC hearing officer "cut" Barrington's testimony short, while allowing Carroll to testify uninterrupted. Barrington also claimed that the PERC's findings were not supported by substantial evidence, and that the PERC failed to credit Barrington's witnesses' testimony. The Fifth DCA affirmed the PERC decision that the reasons for termination were not pretextual. See *Barbara Barrington v. Department of Health*, Case No. 99–1486, 1999 LEXIS 12255 (Fla.Dist.Ct.App. Sept. 7, 1999).

The exact issue that Barrington presented to the hearing officer, and then appealed to the Fifth DCA, that her termination was motivated by race discrimination and/or retaliation, forms the crux of Barrington's Title VII claims in this case. See Docket No. 4 at 5–6. Because this critical issue, involving the same parties, has already been decided adversely to Barrington in a Florida court, she is precluded by the doctrines of collateral estoppel and res judicata from relitigating it in this Court.[3]

---

3. Although not cited by Barrington, this Court is fully aware of the Eleventh Circuit's decision in *Carlisle v. Phenix City Board of Educ.*, 849 F.2d 1376 (11th Cir.1988). In *Carlisle*, the Alabama State Tenure Commission reviewed a school board's decision to transfer the plaintiff to a different position. The tenure commission's review was limited to determining whether the school board's action was taken for political and personal reasons. The tenure commission reversed the board's decision. However, the Alabama Russell County Circuit Court vacated the tenure commission's decision and reinstated the board's decision. On appeal, the state court of civil appeals affirmed the circuit court. The *Car-*

*lisle* plaintiff then instigated a suit in federal court, alleging that his transfer was a product of illegal discrimination. The Eleventh Circuit found that even though plaintiff was estopped, in federal court, from arguing that no legitimate reasons existed for adverse employment action, nothing precluded him from arguing that racially discriminatory reasons existed as well. 848 F.2d at 1380. Unlike the facts in the present case, the Eleventh Circuit found that the plaintiff in *Carlisle* did not and could not have raised his discrimination claim before the tenure commission, because the tenure commission was bound to the record of the proceedings before the school board.

█ Barrington seeks to avoid this conclusion by claiming that she was denied due process in the PERC proceedings. Specifically, Barrington claims that she was not able to fully litigate her retaliation claim, because the PERC hearing officer did not allow her to introduce the EEOC investigative file relating to Barrington's retaliation complaint.[4] *See* Pltf.Exh. 1 at 373–378; *see also* Docket No. 15, Exhibit E, July 22, 1998 Hearing Transcript. Barrington should have raised this issue before the Fifth DCA. Since a Florida court would grant res judicata preclusive effect to all issues—including challenges to an evidentiary ruling—that should have been raised on direct review, this Court is required to do the same.

This Court is convinced that Barrington received the procedural due process that is constitutionally required by *Kremer,* see 456 U.S. at 483–85, 102 S.Ct. 1883 in the state proceedings. She had an opportunity for a full hearing, compulsory process, and representation by counsel. Barrington had a full and fair opportunity to be heard on her claims of race discrimination and retaliation in her state proceedings. Moreover, she chose to appeal the PERC's decision to the Fifth DCA. She is not now entitled to seek a ruling from the United States District Court on the same issues in

hopes of a better result. The Department of Health is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Florida Department of Health's Motion for Summary Final Judgment be **GRANTED.**

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within eleven days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

---

**4.** Prior to the July 10, 1998 hearing, the Department of Health filed a motion to quash the subpoena for the EEO Investigator Melvin Herring, Jr., that required him to bring his investigative filed of Barrington's second EEO complaint. The Department of Health argued that Herring's investigation was ongoing, and was therefore excluded from the public record requirement. During the July 10, 1998 hearing, Barrington argued that her defense had been prejudiced by the Department of Health's failure to produce Herring and his EEOC investigative file relating to her second EEOC complaint. Barrington claimed that

the file could contain relevant documents which might lead to the discovery of a relevant witness. The hearing officer held the record open and continued the hearing to July 22, 1998, to determine whether Herring's investigation was completed. On July 22, 1998, Herring testified that his investigation of the second EEOC complaint was incomplete, at which time the hearing officer granted the Department of Health's motion to quash the subpoena pursuant to Fla.Stat. § 119.07(3)(q). *See* Docket No. 15, Exhibit D, July 22, 1998 Hearing Transcript.